IN RE LIQUIDATION OF CITIZENS STATE BANK OF NOBLESVILLE, HEIN, STATE TREASURER *v.* WRIGHT, SPECIAL REPRESENTATIVE.

[No. 27,184. Filed February 20, 1939.]

*Omer S. Jackson,* Attorney General, and *A. J. Stevenson,* Assistant Attorney General, for appellant.

*George W. Osborn,* and *Noel C. Neal,* for appellee.

FANSLER, J.—The Treasurer of State has appealed from an order of the court administering the liquidation of the Citizens State Bank of Noblesville denying a petition for dividends.

The facts are stipulated and disclose that, on and prior to July 26, 1932, the bank in question was a public depository, and that the County of Hamilton and

certain of the municipalities located therein had total funds on deposit, amounting, on July 26, 1932, to $169,917.56, to secure the repayment of which the said municipalities held security of various kinds; that on said date the bank was unable to liquidate its loans, and withdrawals were very heavy; that, with this condition existing, approximately 85 per cent of the creditors of the bank signed an agreement, the object of which was to permit the bank to continue as a going concern, and by the terms of which it was agreed that the depositors signing the agreement would withdraw not more than 25 per cent. of their deposit accounts in any one year for a period of four years. The municipalities in question were not parties to this agreement. The bank continued as a going concern until the 11th day of July, 1933, at which time the Department of Financial Institutions took possession for the purpose of liquidation. In the meantime the municipalities continued to deposit and draw against their checking accounts in the usual manner. Chapter 33 of the Acts of 1932, Sp. Sess. (Acts 1932, p. 141), commonly known as the Sinking Fund Law, became effective January 1, 1933. By the terms of that act, funds deposited prior to January 1, 1933, were treated as "old money," secured by the bonds or other security theretofore given by the banks under their depository contracts, and funds deposited in 1933 were treated as "new money," secured by the sinking fund. All withdrawals were made payable out of "old money" until such funds were exhausted. Subsequent to the first Monday in January, 1933, all of the "old money" on deposit to the credit of the various municipalities involved was withdrawn, and the bank asked for, and the municipalities surrendered to the bank, the collateral and securities held as security for such deposits. At the time the bank was closed for liquidation there was on deposit to the credit of the several municipalities

a total of $47,591.24, all deposited subsequent to January 1, 1933.

It is provided by chapter 33 of the Acts of 1932, *supra*, that when a bank which is a public depository has gone into voluntary liquidation, the agent or person in charge of the liquidation shall certify the amount of the public deposits to the Attorney General and the Auditor of State, and that the several officers who have public deposits in the depository shall furnish the same officers with verified statements of the amount of the deposits; that thereupon the Attorney General and the Auditor of State shall ascertain and determine the amount of public deposits in the closed depository, and within thirty days after the closing of the depository or suspension of payment, send a copy of their decision as to the amount due  by registered mail to the municipality or officer having the deposit, and to the person or agent in charge of the closed bank. It is provided that their decision shall be published in a newspaper of general circulation in the county where the bank is situated, under the heading "notice to depositors." It is provided that: "Such decision of the attorney-general and the auditor of state, in the event they agree, shall be final, and shall have the same force and effect as an order of court, except as to such depositors as within ten (10) days after publication of such notice to depositors make objections thereto in writing to the auditor of state. . . ." It is provided that if the Attorney General and Auditor of State do not within thirty days forward their decision to the person or agent in charge of the closed depository, or if objections are made within the ten days provided, the case shall be presented to the court having jurisdiction of the liquidation by the person or agent in charge of the depository, and that the amount of the deposit shall be determined by the court. It is further

provided that whenever the decision of the Attorney General and Auditor shall become final, the Auditor of State shall issue a warrant upon the State Sinking Fund to the proper officer of the various municipalities for the amount of the claims so determined, and that the Treasurer of State shall thereupon be subrogated to the rights of the municipalities "to the extent that such State Sinking Fund shall have paid the loss, and shall share in the distribution of the assets of such closed depository on such basis ratably with other depositors."

It is stipulated that on August 22, 1933, the agent in charge of liquidation certified to the Attorney General and the Auditor of State that the public money on deposit in the depository amounted to $47,591.24, and that the treasurers of the several municipalities certified to the same fact; that the Attorney General and Auditor ascertained that the public deposits were in the same amount, and within thirty days sent a copy of their decision by registered mail to each municipality and to the agent in charge of liquidation, and that a copy of their decision was published in a newspaper in Hamilton County, as provided by statute, on September 14, 1933; that no depositors made objections within ten days after the publication of the notice; that thereupon the Auditor of State issued his warrants to the several municipalities involved, aggregating $47,591.24, and written assignments were taken from the municipalities of their claims against the bank.

On January 21, 1935, the liquidating agent of the bank filed with the Clerk of the Hamilton Circuit Court a list of the liabilities of said bank as shown by its books as of July 11, 1933, and recommended the allowance of claims of creditors upon the basis of the amounts therein shown to be due, and published notice to creditors that the report and recommendations were on file,

and that objections to the allowance or disallowance of claims as recommended must be filed not later than April 15, 1935, pursuant to section 18-317 Burns' Ann. St. Supp. 1938 (§7779 Baldwin's Supp. 1937). Such list of liabilities showed amounts due the several municipalities involved aggregating $47,591.24.

On October 18, 1933, certain depositors who were parties to the agreement made on July 26, 1932, filed a petition with the court setting up the agreement above described, and alleging that, in violation of the terms of the agreement, the bank permitted certain depositors and creditors to withdraw large sums, and refused to permit certain other depositors and creditors to withdraw any part of the funds due them, and that they never have been paid any portion of their deposit; that at the time of the execution of such agreement the bank was insolvent and in failing condition, and so continued until it was closed; "that by reason of said acts of said bank as herein alleged a large number of its creditors, who joined in the execution of said moratorium agreement, withdrew large sums of money from said bank while these petitioners and their respective decedents (all signers of the agreement) received nothing from said bank." It is alleged that, "under such circumstances said several payments constituted unlawful preferences in favor of the creditors receiving such payments, and also operated to the disadvantage of these petitioners; that equity and good conscience requires that said creditors be now equalized." There was a prayer that the liabilities of the bank as of July 26, 1932, the date on which the agreement was signed, should be ascertained and determined, and distribution made of the assets "to these petitioners and other creditors similarly situated, before the payment of any dividends to those creditors of said bank who were permitted to withdraw from said

bank a part of their funds while said bank was in such insolvent and failing condition." The court ordered that the liquidating agent file an analysis of the several deposits and liabilities of the bank at the time of closing, and the amount of withdrawals of the various deposits from July 26, 1932, until the bank closed. The Department of Financial Institutions filed demurrers and answers, and on the 23rd day of July, 1935, it was adjudged: "That the recommendations of the Special Representative as to the allowance of claims now on file in the office of the clerk of this court be not approved, but that said Special Representative and the Department of Financial Institutions of the State of Indiana are ordered and directed to set up all of the deposit accounts in said bank which were in said bank on the 26th day of July, 1932, as of said date and that the balances of the various depositors reflected by the books of said bank on said date be and are made the basis of distribution for the payment of dividends on said accounts. That those of said depositors who were able to and have withdrawn a part of their respective deposit accounts after the 26th day of July, 1932, be charged with the amount of such withdrawal before sharing in any distribution made to the depositors of said bank of this particular class."

In the instant case, the Department of Financial Institutions answered, setting up the facts respecting the petition of the creditors who had signed the so-called moratorium agreement, and the decree above referred to, and alleging that said decree and order of equalization was binding upon the Treasurer of State and the State Sinking Fund. Neither the State, nor the Treasurer of State, nor the local municipalities were made parties to the proceeding in which the decree was entered, nor did any of them have any notice of any proceeding for allowance or disallowance

of claims other than the published notice by the liquidating agent above referred to. It is noted that the decree was entered on the 23rd day of July, 1935. The petition had been pending since the 18th day of October, 1933. The statutory notice of recommendation of claims for allowance or disallowance was dated January 21, 1935, and publication of the notice was on January 23, 1935, January 30, 1935, and February 6, 1935. Section 18-317 Burns' Ann. St. Supp. 1938 (§7779 Baldwin's Supp. 1937), under which the statement of liabilities and the recommendation for allowance or disallowance of claims was filed and the notice thereof was given, provides: "Any creditor who fails to appear and file his petition, as above provided, within the time fixed by the notice, or by an extension granted by the court, shall be forever barred from asserting any claim different from that recommended by the department, or from asserting any claim to priority, and from contesting or opposing the allowance, with or without priority, of any claim asserted by any creditor." In *Dept. of Fin. Insts.* v. *Union Bank & Trust Co., Tr.* (1937), 212 Ind. 97, 104, 105, 106, 107, 8 N. E. (2d) 235, 238, 239, it was said: "This provision does not, as appellant contends, absolutely bar a claim if not filed within the prescribed time. It only bars one from: (a) asserting a claim different from that recommended by the department; (b) from asserting any claim to priority; and, (c) from contesting or opposing the allowance, with or without priority, of any claim asserted by any creditor." The last clause must be construed as referring to opposing the allowance of a claim asserted by any *other* creditor. And in further commenting upon the statutory provision, it is said: "The section of the Act in question is not a strict statute of limitations in our judgment and was not intended to be so by the legislature. It should be given a liberal construction to accom-

plish the purpose for which it was intended. The purpose of the Act was to provide a method for the equal distribution of the assets of an insolvent bank to all its creditors." The provision may be reasonably construed to mean that when a claim has been recommended for allowance upon a certain basis, the creditor is charged with knowledge of that fact, and, until he is notified to the contrary, may rely upon his claim being allowed upon that basis. If he is not satisfied with the recommendation of the liquidating officer, he may file his petition and have his claim determined by the court, and he need not give other creditors notice of his petition. If his claim is allowed for a larger amount or he is granted a preference which was not recommended, other creditors who did not appear and ask to be heard are barred as to his claim. We cannot believe that the Legislature intended that, after a creditor was notified that the books of the bank show that he is a creditor for an amount which he feels is correct, and that his claim has been recommended for allowance in that amount, the recommendation may be withdrawn or changed without notice to him, and that he is bound by the change, and, since we cannot construe the act as intending such a result, there is no necessity for going into the question of whether such a procedure would conform to the requirements of due process.

Long before the decree relied upon in the answer was entered, the determination of the amount due the various municipalities had been determined by the Attorney General and the Auditor of State and the notice had been given. The Auditor of State had acted upon the determination and paid the municipalities the amounts involved, and the claims had been assigned to the Treasurer of State. The statute provides that the decision of the Attorney General and the Auditor of State as to the amount due "shall be final, and shall have

the same force and effect as an order of court"; that when the treasurer has paid the municipalities out of the sinking fund, pursuant to the decision of the Attorney General and the Auditor of State, the treasurer shall be subrogated to the rights of the municipalities "to the extent that such state sinking fund shall have paid the loss, and shall share in the distribution of the assets of such closed depository on such basis. . . ." An order of court allowing a claim is a final judgment, and, by the terms of the statute, a determination of the amount due by the Attorney General and the Auditor of State is final and has the same force and effect as such a court order. Such an order can only be set aside or modified in a direct proceeding for that purpose. The petition of the creditors who signed the moratorium agreement did not seek to set aside the determination of the amount due the municipalities, and the decree did not undertake to set it aside or modify it. It must therefore be treated as finally fixing the amount due.

It is stipulated that the Department of Financial Institutions and the Attorney General had knowledge of the proceedings, and the decree entered by the Hamilton Circuit Court, and that the Treasurer of State had knowledge that an equalization had been made in conformity to the decree, and that the funds of the bank were being paid out according to the decree, but it cannot be seen that such knowledge is of any importance. Passing the question as to whether or not knowledge on the part of these officers or laches upon their part can be the basis of an estoppel against the state, and assuming that the state had knowledge of the proceeding and is bound thereby as any private individual would be, it must still be concluded that the state was not required to rush in to protect the decision having the force of a judgment by which its claim had been determined, and that, in the absence of any direct at-

tack, the state was justified in treating the proceeding by the other creditors as affecting only creditors whose claims had not been adjudicated and determined.

The appellant therefore was not barred by the decree, but it must be concluded on the contrary that any right of the liquidating agency or of any creditor to dispute the amount and basis of the state's claim was effectively barred forever by the determination of the Attorney General and the Auditor of State once it had become final.

But if the question had been an open one, to be decided upon the merits, the moratorium agreement could not affect the state's right to recover. The municipalities were not parties to the agreement and had no power to enter into it. They were not general creditors. Their deposits were secured. The fact that, when all deposits made prior to 1933 had been paid, the collateral held as security by the municipalities was returned to the bank at its request, negatives the conclusion that there was any understanding or agreement between the municipalities and the bank that there should be no withdrawals by the municipality. Private depositors were free to agree among themselves that they would not withdraw their deposits, but neither they nor the bank could bind the municipalities not to withdraw their funds, nor create a condition by which the rights of the municipalities could be controlled or affected otherwise than if no such moratorium agreement had been entered into. It is noted that the decree of the court undertakes to fix the rights of creditors on the basis of their status on July 26, 1932. Presumably the signers of the moratorium agreement were unsecured depositors who had agreed among themselves as to what their mutual rights would be, but, upon the date in question, the municipalities held security for their deposits aggregating $51,377.06, which

were afterwards surrendered to the bank and became part of its general assets available for the payment of claims of the signers of the agreement and creditors generally. Any decreee in equity fixing the rights of the municipalities, as of July 26, 1932, as merely unsecured creditors, and without returning to them their collateral or its equivalent, would be erroneous even if they were bound by the agreement.

At the time the petition of the Treasurer of State was filed, the liquidating agent had paid 40 per cent. on general claims, but had paid to the Treasurer of State for the sinking fund only $710.97. The amount of the claim is $47,591.24, and the sinking fund is entitled to an order for the payment of 40 per cent. of its claim less $710.97, and that it participate ratably in all future dividends.

Judgment reversed, with instructions to enter judgment for the appellant as indicated.

Roll, J., absent.